# APRIL TERM, 1913.*

---

## KINSEY *v.* DICKINSON.

1. BROKERS—CONTRACTS—PHRASES—NET RENTALS.

   Under terms of a broker's contract to secure tenants for real property for $500 and 10 per cent. of the net rentals, the phrase "net rentals" included the entire sum received for rent of the property less expense of maintenance, plaintiffs conceding that taxes and insurance should be first deducted.

2. SAME.

   Defendant was not entitled to deduct the cost of certain partitions and improvements to the building and premises required to make the same fit for the purposes of the tenant, although such cost was added to the annual rent in sums sufficient to reimburse the landlord for the outlay.

Error to superior court of Grand Rapids; McDonald, J., presiding. Submitted January 8, 1913. (Docket No. 21.) Decided April 8, 1913.

Assumpsit by William H. Kinsey and another against Albert G. Dickinson for broker's commissions. Judgment for plaintiffs. Defendant brings error. Affirmed.

*Travis, Merrick & Warner,* for appellant.

*Smedley, Linsey & Lillie (Sheridan F. Master,* of counsel), for appellees.

OSTRANDER, J. Plaintiffs produced testimony tending to prove the facts now to be stated. As one of

---

* Continued from Vol. 174.

them testified, they are in the real estate business. They learned in the year 1906 that defendant was contemplating the purchase of land and the erection thereon of a building for his own business, to be occupied when his term in other premises, a period of three or four years, had expired. They learned also that temporarily, but for a probable period of three or more years, the Federal government desired to lease premises in Grand Rapids for a post office, for the holding of court, and for other purposes. They suggested to defendant that he buy real estate, erect his building, and lease the premises to the Federal authorities for the aforesaid purposes. They procured, with his approval, an option on suitable ground and were active in securing from the government a contract for a lease of a building to be erected thereon at an annual rental of $12,500, payable quarterly. For their services, if no lease was made, plaintiffs were to receive no pay, and defendant was to pay the necessary expenses of the effort. If the lease was secured, plaintiffs were to be paid $500 and 10 per cent. of the net annual rent as it was received from the government; defendant paying necessary expenses of securing the contract. Defendant paid the expenses, purchased the land and built the building, paid plaintiffs $500, and later $250. The building was occupied by the government, and, when this suit was begun, defendant had received upon his lease the sum of $34,375. Because he declined to make further payments, plaintiffs sued defendant, claiming there was due to them $3,206.89. A jury returned a verdict in their favor for $2,775, for which sum a judgment was entered.

The testimony offered by defendant tended to prove the facts already stated, except the fact of an existing agreement to pay plaintiffs a percentage of the net annual rental; his theory being that the sum of $500, which he paid to them, discharged all obligation on his part. It is a part of his contention, supported by his

testimony, that it was understood, when negotiations were opened with the government, that he would be required to furnish heat, light, water, and janitor service for the building, and that, feeling unable to attend to such matters personally, it was contemplated that plaintiffs would attend to them, act as custodians of the building, supervise its construction, and receive for their services, including the securing of the option on the land, $500 and 10 per cent. of the net rent, but that it was learned later that such maintenance would not be, and it was not, required, and plaintiffs were not required to supervise construction. In consequence, plaintiffs had not earned, and were not entitled to receive, a percentage of the rents. Whether there was an existing agreement and the terms thereof were questions submitted to the jury after a trial, in the course of which various exceptions were taken by defendant, which will be later on referred to. Beyond this it is contended by defendant that, if an agreement to pay a percentage of the net rentals was established, the amount of the net rent received by defendant was a question of fact, and that the court erred in declining to submit that question to the jury.

Defendant moved for a new trial; one ground of the motion being that the court erred in not instructing the jury, as requested by defendant's counsel, that, if they found for the plaintiffs, they were to determine the amount of net rentals within the meaning of the contract, and that, in arriving at the amount, it was within their province to deduct an item of $9,500 for the cost of certain partitions, wiring, etc. In denying the motion, the court said the refusal of such requested instruction was proper because—

"The cost of the partitions was no part of the maintenance, and, in determining the net rentals, there would be no more reason for deducting the cost of

partitions than for deducting any other item for the cost of the construction of the building."

The testimony disclosed the fact that, for the use of the Federal authorities, certain partitions were required and certain fixtures and wiring had to be provided, not useful to other tenants, and not of value to the building after the termination of the lease. It had been suggested by some one that the cost of these specially designed and constructed fixtures be added to the rent demanded. In the first propositions made by defendant, one for rental with maintenance and one for rental without maintenance, the sum of $9,500 was included in the first year's rent. That is to say, in the proposition submitted January 23, 1907, for rental without maintenance, is the following:

"Including cost of necessary partitions specified, $19,000.00 (nineteen thousand dollars) for the first year; $9,500 (nine thousand five hundred dollars) for each year thereafter."

Concerning this matter, one of the plaintiffs testified in part as follows:

"We made a difference of $9,500 per year in the first year on account of that item of partitions, etc. The same thing was true with reference to the second proposition. We made the same difference of $9,500 the first year for the same reason. * * *

"On the proposition for rental without maintenance, we had the same net figure (that is, $9,500 per year for rental proper); the additional amount of $9,500, which goes to make up the $19,000 of the first year, being to cover these items of partitions, wiring, etc. The contract, as finally made, was for $12,500 per year at a uniform rental; the government not to pay any more for the first year than they did for the second or third or any subsequent year. The cost of the items included in the $9,500 were scattered along through the three years, although that was not an arbitrary figure in making the price at $12,500 instead of getting $9,500 a year net rental after we got the $9,500 back the first year, according to our

original proposition. We got $12,500 per year, but had to get back that $9,500 out of that. It was figured that way, although I don't think it cost $9,500. That is the figure we used for that purpose. We figured a larger rental at one time before we went to Chicago for the first year than we did subsequent years, because we did not know but what possibly the government might only take it one year and did not want to throw away these partitions and things; I mean, we did not want to lose the cost of them.   *   *   * I cannot say where the idea came from in the first place to include an allowance for those items in the first year's payments. Possibly it came from the architect. We did not discuss in detail just what items should be deducted in figuring net rental; but the idea was to figure them on the amount which Mr. Dickinson might realize net as rental of the building. The only two items of detail that were spoken of being maintenance and interest, that should be taken as a charge against the proposition. The $9,500, which was to repay Mr. Dickinson for these partitions, etc., was not to come out. I did not discuss that matter with him, but there was no figuring produced where that was ever figured in that shape at all. On the contrary, it was just the opposite."

Defendant testified that for certain reasons it was deemed best to distribute these items over a period of years, and that it was supposed that the lease would run for a longer period than three years. He further testified:

"As to Mr. Kinsey's testimony that he thought there were some figures made at some time in which the 10 per cent. was figured on and included this sum of $9,500 which we were to get from the government for the partitions, etc., there were no figures whatever of that sort. It was never talked between us that I should pay him 10 per cent. on that amount. The 10 per cent. clause, if it took effect, was to be on the net rentals.   *   *   * If this 10 per cent. clause applied, it was to be 10 per cent. on the net rentals after deducting items of necessary outlay, such as maintenance, taxes, insurance. Now it is true that the building was let without maintenance; but,

before the government went in, we had to incur outlay of that precise nature. * * * I also had to pay Mr. Ward, who owned the property on the north, $200 for the privilege of a light-well during the time the government occupied my building. This $200 payment was for an agreement on the part of Mr. Ward not to construct anything on the space covered by it during the time that the government occupied my building. The privilege was discontinued when the government discontinued occupying the building."

In substance, I have stated the foundation for the claim of defendant that it was error not to submit to the jury specifically the question of what was the amount of the net rental. Plaintiffs conceded that the gross sum received for rent should be diminished by the amount paid by defendant for taxes and for insurance, and computed the sum due to them accordingly.

It seems to me to be obvious that, in the original arrangement which the parties made, the term "net rental" was used with reference to the gross rental, less the sum expended for maintenance, and that, when maintenance was eliminated, the word "net" was without significance. In this view, and I think decision of the question may be rested here, the court was not in error in refusing to charge as requested. Aside from this consideration, defendant demanded and received $12,500 yearly as rent for his premises, constructed as they were constructed. This was the net rental, unless otherwise agreed. There is no testimony tending to prove that it was otherwise agreed. I conclude that the court correctly instructed the jury.

It is a contention of defendant that the verdict which was returned cannot be justified by the testimony, and is apparently a compromise verdict, for which reason it should have been set aside. It appears that the jury was out one night and a part of two days, from which it may be inferred that an agreement was not reached without difficulty. It does not

necessarily follow from these circumstances that the verdict was the result of a compromise. Attention has been called to the testimony of defendant to the effect that he paid $200 annually to the owner of adjoining premises to secure light for his building. The concession of plaintiffs, with respect to taxes and insurance, may have affected the judgment of the jury with respect to this item. Whatever the item allowed by the jury may have been, it is in reduction of the plaintiffs' demand, and it does not appear positively, or by necessary inference, that the result was not the deliberate conclusion of the jury, based upon testimony. Errors are assigned upon exceptions to rulings admitting testimony, to the arguments of counsel for plaintiffs to the jury, and to an alleged attempt to bring to the attention of the jury by interrogatories, not answered, the fact that defendant was entitled to receive from the government some rent in addition to that already paid. These have received attention, but, in my opinion, none of them are well assigned.

No reversible error appearing, the judgment is affirmed.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, STONE, and BIRD, JJ., concurred.